**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**Atlanta Division**

| | | |
|---|---|---|
| FOUNDING FOURTEEN, INC. d/b/a FULTON ACADEMY OF SCIENCE AND TECHNOLOGY, ANNETTE HIGGINS, STAN J. BEINER, ASHLEY STINGER, JUNE ERICKSON, JOSEPH AKPAN, and PETER EPSTEIN, | ) | CIVIL ACTION NO. 1:25-cv-05436-SDG |
| *Plaintiffs,* | ) | |
| v. | ) | |
| ALLIANCE OF NONPROFITS FOR INSURANCE, RISK RETENTION GROUP, | ) | |
| *Defendant.* | ) | |

**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

Ethan M. Knott
FELLOWS LABRIOLA LLP
Suite 2400 Harris Tower
233 Peachtree Street, N.E.
Atlanta, Georgia 30303

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. STATEMENT OF FACTS ........ 3

A. The Underlying Lawsuits. ........ 3

B. The ANI Policies. ........ 4

C. ANI's Coverage Position. ........ 6

III. LEGAL STANDARD ........ 7

IV. ARGUMENT AND CITATION TO AUTHORITY ........ 8

1. ANI owes a duty to defend Plaintiffs under the 2019 Policy's ISCPA Coverage for Doe I. ........ 8

2. ANI cannot shift the entire Doe I defense to the 2018 Policy. ........ 11

a. Georgia's rules for contract construction. ........ 11

b. ANI's position renders Section 1(b) meaningless and mere surplusage, and it violates the repugnant provisions doctrine ........ 12

3. Even if ANI's position is accepted, ANI must defend Beiner, Epstein, and FAST under the 2019 Policy. ........ 21

V. CONCLUSION ........ 25

**CASES**

*Ace Am. Ins. Co. v. Wattles Co.*,
930 F.3d 1240 n.22 (11th Cir. 2019) ....................12

*Argo v. G-Tec Servs., LLC*,
338 Ga. App. 608 (2016) ....................11, 16

*Cont'l Cas. Co. v. Winder Lab'ys, LLC*,
73 F.4th 934 (11th Cir. 2023) ....................9

*Deep Six, Inc. v. Abernathy*,
246 Ga. App. 71 (2000) ....................12

*Elan Pharm. Rsch. Corp. v. Emps. Ins. of Wausau*,
144 F.3d 1372 (11th Cir. 1998) ....................9

*Fireman's Fund Ins. Co. v. Univ. of Ga. Athletic Ass'n*,
654 S.E.2d 207 (Ga. *Ct.* App. 2007) ....................9, 23

*Flynt v. Life of S. Ins. Co.*,
312 Ga. App. 430 (2011) ....................19

*Giddens v. Equitable Life Assur. Soc'y of U.S.*,
445 F.3d 1286 (11th Cir. 2006) ....................19

*Nat'l Cas. Co. v. Ga. Sch. Bds. Ass'n – Risk Mgmt. Fund*,
304 Ga. 224 (2018) ....................12

*Nuvell Nat'l Auto Fin., LLC v. Monroe Guar. Ins. Co.*,
319 Ga. App. 400 (2012) ....................21

*Penn-Am. Ins. Co. v. Disabled Am. Veterans, Inc.*,
490 S.E.2d 374 (Ga. 1997) ....................9

*Sapna Foods, Inc. v. Olive Oil Factory, LLC*,
2026 WL 917420, at *2 (N.D. Ga. Mar. 31, 2026) ....................7

*SavaSeniorCare, LLC v. Starr Indem. & Liab. Co.*,
2021 WL 4429088, at *12-13 (N.D. Ga. Sept. 27, 2021)....................19

*York Ins. Co. v. Williams Seafood of Albany, Inc.*,
273 Ga. 710 (2001) ....................................................................................................17

**STATUTES**

O.C.G.A. § 13-2-2(4) ....................................................................................................12

# I. INTRODUCTION

This dispute turns on a single question: Does ANI owe a duty to defend Plaintiffs in *Doe I* under the 2019 Policy? It does. FAST operates a K-8 public charter school in Roswell, Georgia. Like every school, FAST faced the risk that a teacher would harm a student. And it insured against that risk—multiple times. Relevant to this dispute, FAST purchased back-to-back policies from ANI. The first covered the 2018-2019 school year ("2018 Policy"), while the second covered the 2019-2020 school year ("2019 Policy"). Each carried its own period, its own premium, and its own $1 million limit for improper sexual conduct and physical abuse claims ("ISCPA Coverage").

In 2023, two former students sued FAST and its former administrators and employees in two separate lawsuits for bodily injury arising out of alleged "improper sexual conduct" and/or "physical abuse." *Doe II* alleged acts taking place during the 2018 Policy, while *Doe I* alleged acts taking place during the 2019 Policy. Two different victims, alleging different conduct, in different school years, involving different administrators. Still, ANI agreed to defend both lawsuits under only the 2018 Policy. Why? Both Policies provide that defense costs erode their respective limits. By placing both *Doe I* and *Doe II* in only the 2018 Policy, ANI owed only $1 million in limits, not the $2 million it should have provided to defend its non-profit client against these distinct claims.

How did ANI get there? The ISCPA Coverage's definitions for "improper sexual conduct" and "physical abuse" treat every act by one person or two in concert as "one act," "regardless of" the number of injured parties, the "period of time" over which the acts occur, or the number of acts. ANI attempts to lift that batching clause out of the definition and drop it into the insuring agreement. By doing so, ANI contends that alleged conduct in 2020 against *Doe I* batches with alleged conduct in 2018 against *Doe II*. Thus, the 2019 Policy remains untouched.

But the ISCPA Coverage's text, its structure, and Georgia law forbid that result. The Court should hold that ANI has a duty to defend Plaintiffs in *Doe I* under the 2019 Policy for three reasons. *First*, *Doe I* attaches to the 2019 Policy. The first alleged acts of "improper sexual conduct" and/or "physical abuse" against *Doe I*, and every act that followed, fall inside the 2019 Policy period. Thus, the 2019 Policy arguably and potentially covers *Doe I*, triggering ANI's duty to defend under that policy. *Second*, ANI cannot shift its *Doe I* defense duty to the 2018 Policy without rendering Section 1(b) superfluous—a construction that Georgia law forbids. *Third*, even on ANI's own construction, *Doe I* pleads the alleged failures of FAST's principal and assistant principal for that school year—Beiner and Epstein—as occurring during only the 2019 Policy period and not in concert with anyone else.

For these reasons, and those set forth below, the Court should enter summary judgment in Plaintiffs' favor.

## II. STATEMENT OF FACTS

### A. The Underlying Lawsuits.

FAST is a K-8 public charter school in Roswell, Georgia, operated by Plaintiff Founding Fourteen, Inc., a non-profit corporation. (SUMF ¶ 1.) In 2017, FAST hired Robert Vandel ("Vandel") as a science teacher. (SUMF ¶ 2.) Two lawsuits arise from Vandel's different alleged sexual misconduct toward two different students:

- *Doe II et al. v. Founding Fourteen, Inc., et al.*, No. 1:23-cv-02666-SCJ (N.D. Ga.) ("*Doe II*"), in which the operative complaint alleges that Vandel groomed, harassed, and physically molested one student, involving the 2018-2019 school year and ending when her parents withdrew her from FAST in December 2019 (SUMF ¶¶ 19, 24); and

- *Doe I et al. v. Fulton Cnty. Schs. et al.*, No. 1:23-cv-00799-JPB (N.D. Ga.) ("*Doe I*"), in which the operative complaint alleges that Vandel groomed, sexually harassed, sexually assaulted, and raped a different student "during the Second Semester of the 2019-2020 school year" (SUMF ¶ 19, 27).

Neither complaint alleges any abuse of *Doe I* before spring 2020. (SUMF ¶ 28.) The operative complaints also name FAST administrators and board members. As relevant here, Beiner became FAST's principal at the start of the 2019-20 school year, with Epstein serving as an assistant principal. The earliest dated act for Beiner or Epstein in *Doe I* traces to their alleged response to reports received in late November and December 2019. (SUMF ¶¶ 29-30, 34-35.)

*Doe II* is on appeal at the Eleventh Circuit after the Court entered summary judgment in Plaintiffs' favor on September 30, 2025. (SUMF ¶ 23.) *Doe I* is stayed at the pleading stage pending resolution of this coverage action. *Id.*

**B. The ANI Policies.**

ANI issued the 2018 Policy and the 2019 Policy to FAST for consecutive annual periods. (SUMF ¶¶ 3-4.) Each includes ISCPA Coverage bearing the same form number and edition (ANI-RRG-ISCET 06 18) with limits of $1 million each claim and $2 million aggregate, eroded by defense costs. (SUMF ¶¶ 5, 7-8.) The 2019 Policy is a renewal, with its own policy number, period, premium, and limits, and nothing on its face conditions its ISCPA Coverage on the absence of earlier misconduct at the school. (SUMF ¶¶ 6, 10.)

The ISCPA Coverage's insuring agreement contains the policies' attachment rule. Section 1(a) provides, in relevant part:

> The first act of "improper sexual conduct" or "physical abuse" must be committed in the "coverage territory" during the effective dates of this policy's period.

(SUMF ¶ 11.) Section 1(b) decides when "[a]ny 'claim,' 'claims,' or 'suits'" can be merged and assigns that merged conduct a date:

> Any "claim," "claims" or "suits" for "damages" because of "bodily injury" arising from **a single act or a series of continuous or repeated acts** of "improper sexual conduct" or "physical abuse" by the same person or two or more persons acting in concert, including "damages" claimed by any person or organization for care, loss of services, or death resulting at any time from "bodily injury" arising from "improper sexual conduct" or "physical abuse", will be

> considered as having resulted from the same "improper sexual conduct" or "physical abuse," which shall be **deemed to have been committed on the date of the first such act**. The date of the first such act of "improper sexual conduct" or "physical abuse" must take place during the effective dates of this policy.

(SUMF ¶ 13 (emphasis added).) Section 7(5) of the ISCPA Form defines "improper sexual conduct" to include "the failure to report an incident of 'improper sexual conduct' to the proper authorities" and "the withholding of pertinent information concerning an incident of 'improper sexual conduct' from the proper authorities." (SUMF ¶ 14.) The second paragraph of Section 7(5), the clause on which ANI's coverage position appears to rest, provides as follows:

> Each, every and all actual, threatened or alleged act or acts of "improper sexual conduct" committed by, participated in, directed by, instigated by or knowingly allowed to happen by one person or two or more persons acting in concert shall be considered to be **one act** of "improper sexual conduct" **regardless of**: a. the number of injured parties; b. **the period of time** over which the act or acts of "improper sexual conduct" take place; or c. the number of acts of "improper sexual conduct."

(SUMF ¶ 15 (emphasis added).) Section 7(7) contains a parallel provision for "physical abuse." (SUMF ¶ 16.)

Section 2(6) bars coverage for abuse "which takes place prior to or after the effective dates of this policy," and Section 7(2) requires that a "claim" "must result from" abuse "that is committed during the effective dates of this policy." (SUMF ¶ 17.) Section 6(7), titled "Separation of Insureds," provides that "[e]xcept with respect to the SECTION 5 – LIMITS OF INSURANCE, and any rights or duties

specifically assigned to the Named Insured," the insurance applies "[s]eparately to each insured against whom a 'claim,' or 'claims' is made or a 'suit' is brought." (SUMF ¶ 18.)

**C. ANI's Coverage Position.**

By letter dated December 7, 2022, ANI "accept[ed] the defense of Founding Fourteen, Inc. to the [Underlying Lawsuits] pursuant to the Improper Sexual Conduct and Physical Abuse Liability coverage included within ANI Policy No. 2018-47268," and "respectfully declined" the tender "[a]s to all other coverages included within all other policies[.]" (SUMF ¶¶ 40, 42.)

ANI's Answer admits its batching position: the two Underlying Lawsuits purportedly "constitute claims 'arising from a single act or a series of continuous or repeated acts of "improper sexual conduct" or "physical abuse" by the same person…,'" such that coverage "is potentially available under the 2018 Policy," subject to "the $1 million per occurrence limit of liability under the 2018 Policy's ISCPA Form." (SUMF ¶¶ 46-47.) The December 7, 2022 letter rests on a stated "assum[ption]" that Vandel's conduct "initially took place during the term of Policy No. 2018-47286 [sic]." (SUMF ¶ 43.)

ANI is defending both *Doe I* and *Doe II* under only the 2018 Policy and its $1 million per-claim ISCPA limit that erodes with defense costs. (SUMF ¶ 48.) ANI has informed Plaintiffs that its obligations to defend and indemnify "will

terminate" after its 2018 Policy's limit is eroded by defense costs, which is expected to occur in the immediate future. (SUMF ¶ 49.)

ANI's Answer admits that the *Doe I* complaint "alleges misconduct that took place in 2020, during the policy period for the 2019 Policy, among other time periods." ANI likewise admits that "an actual controversy exists, entitling Plaintiffs to a declaration of rights and further relief under 28 U.S.C. § 2201," as to whether coverage is available only under the 2018 Policy "or, whether coverage in relation to the Lawsuits is potentially available, separately, under both Policies[.]" (SUMF ¶¶ 44, 50.)

## III. LEGAL STANDARD

"Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Sapna Foods, Inc. v. Olive Oil Factory, LLC*, 1:23-cv-03749-SDG, 2026 WL 917420, at *2 (N.D. Ga. Mar. 31, 2026) (citing Fed. R. Civ. P. 56(a)). "If a movant meets its burden, the party opposing summary judgment must present evidence showing either (1) a genuine issue of material fact or (2) that the movant is not entitled to judgment as a matter of law." *Id.* (citing *Celotex*, 477 U.S. 317, 324 (1986)).

## IV. ARGUMENT AND CITATION TO AUTHORITY

The Court should grant Plaintiffs' Motion for three reasons. *First,* ANI owes a duty to defend *Doe I* under the 2019 Policy. *Second*, ANI's attempt to shift that duty to the 2018 Policy renders Section 1(b) of the Policies meaningless and mere surplusage. *Third*, even if the Court accepts ANI's batching/collapsing argument, it still owes a duty to defend Beiner, Epstein, and FAST under the 2019 Policy because *Doe I* alleges independent acts of "improper sexual conduct" and/or "physical abuse" that trace to only the 2019 Policy's period.

### 1. ANI owes a duty to defend Plaintiffs under the 2019 Policy's ISCPA Coverage for Doe I.

The ISCPA Coverage in both Policies requires ANI to "pay those sums that an insured becomes legally obligated to pay as 'damages' because of 'bodily injury' arising from 'improper sexual conduct' or 'physical abuse'" that occur during the respective Policy's period. For the 2018 Policy, that period is August 1, 2018 to August 1, 2019. For the 2019 Policy, that period is August 1, 2019 to August 1, 2020. Each coverage form carries its own $1 million per-claim ISCPA limit. Relevant to this dispute, the ISCPA Coverage requires ANI to "defend any 'suit' seeking such 'damages.'" Any defense costs that ANI incurs in fulfilling its duty erode the ISCPA Coverage's limits. And ANI's "duty to defend ends when [it] ha[s] exhausted the applicable limits[.]" (SUMF ¶¶ 3-5, 7-8, 11-12.)

The parties agree that both Policies require ANI to defend and indemnify any claim that is covered under the ISCPA Coverages. The parties also agree *Doe I* and *Doe II* assert claims alleging "'bodily injury' arising from 'improper sexual conduct' and/or 'physical abuse'" against Plaintiffs, who are insureds under the Policies. The parties further agree that ANI owes a duty to defend *Doe II* under the 2018 Policy. (SUMF ¶¶ 9, 11, 47-48.) But any agreement ends there. This dispute centers, in part, on whether ANI owes a duty to defend *Doe I* under the 2019 Policy. It does.

"The duty to defend is extremely broad under Georgia law." *Cont'l Cas. Co. v. Winder Lab'ys, LLC*, 73 F.4th 934, 948 (11th Cir. 2023). The duty to defend is determined by comparing the language of the policy to the allegations of the complaint. *Id.* at 941. "[A]n insurer must provide a defense against any complaint that, if successful, might potentially or arguably fall within the policy's coverage." *Elan Pharm. Rsch. Corp. v. Emps. Ins. of Wausau*, 144 F.3d 1372, 1375 (11th Cir. 1998).

"[A]n insurer is obligated to defend even where 'the allegations of the complaint against the insured are ambiguous or incomplete with respect to the issue of insurance coverage.'" *Fireman's Fund Ins. Co. v. Univ. of Ga. Athletic Ass'n*, 654 S.E.2d 207, 209 (Ga. Ct. App. 2007) (quoting *Penn-Am. Ins. Co. v. Disabled Am. Veterans, Inc.*, 490 S.E.2d 374, 376 (Ga. 1997)). Where the claim asserted is one that might be covered under the policy, "doubt as to liability and insurer's duty to defend should be resolved in favor of the insured." *Id.* (citation omitted).

*Doe I* alleges that she was a student at FAST "during the 2019-2020 school year" and that, in spring 2020, she "was groomed, sexually harassed, sexually assaulted, and raped" by Vandel, a (now former) FAST teacher. (SUMF ¶¶ 26-28.) *Doe I* does not base her claims on alleged acts against her before that school year, and she does not allege that she attended FAST any earlier either. She alleges that the first acts of "improper sexual conduct" and/or "physical abuse," and every act that followed, occurred during the 2019 Policy period.

ANI said the same thing when it first evaluated the claims. Its December 2022 coverage letter described *Doe II* as "a separate claim" of improper sexual conduct "as to a separate claimant," and described the conduct underlying *Doe I* as "improper sexual conduct which was alleged to have taken place in early 2020." (SUMF ¶¶ 40-41.) Its Answer admits that *Doe I* "alleges misconduct that took place in 2020, during the policy period for the 2019 Policy, among other time periods." (SUMF ¶ 44.)

On these facts, *Doe I's* claims potentially or arguably fall within the 2019 Policy, and thus ANI owes a defense to all Plaintiffs under that policy. Each is an insured: FAST as the Named Insured; Akpan and Erickson as board officers and directors; and Higgins, Stinger, Beiner, and Epstein as employees. (SUMF ¶¶ 3-4, 9, 39.) And all seven are *Doe I* defendants, sued for "improper sexual conduct" and/or "physical abuse" entailing their own alleged knowledge of Vandel's conduct and their own alleged failure to act on it. (SUMF ¶¶ 36, 39.) Because the

2019 Policy's ISCPA Coverage defines "improper sexual conduct" to include "the failure to report an incident of 'improper sexual conduct' to the proper authorities," along with the "withholding of pertinent information," the claims against Plaintiffs in *Doe I* trigger the 2019 Policy's ISCPA Coverage. (SUMF ¶ 14.) The same holds true for "physical abuse" too. (SUMF ¶ 16.)

**2. ANI cannot shift the entire Doe I defense to the 2018 Policy.**

ANI does not dispute that it owes Plaintiffs a duty to defend *Doe I*. Instead, ANI assigns that duty to the 2018 Policy. And because the 2018 Policy enjoys only a $1 million per-claim ISCPA limit that erodes with defense costs, ANI contends that its duty to defend *Doe I* (and *Doe II*) ends when that per-claim ISCPA limit is exhausted. (SUMF ¶¶ 42, 46-49.) The Court should reject ANI's position.

**a. Georgia's rules for contract construction.**

"The first rule that courts must apply when construing contracts is to look to the plain meaning of the words of the contract[.]" *Argo v. G-Tec Servs., LLC*, 338 Ga. App. 608, 609 (2016) (citation omitted). It "is a cardinal rule of contract construction that a court should, if possible, construe a contract so as not to render any of its provisions meaningless and in a manner that gives effect to all of the contractual terms." *Id.* "[C]ourts must favor a construction that upholds the contract in whole and in every part, and look at the whole contract in construing any part." *Id.* (cleaned up). "Courts should not render any language in a contract

as superfluous, and any construction that renders portions of the contract language meaningless should be avoided." *Id.* (cleaned up).

Georgia has codified the rule: "The construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part." O.C.G.A. § 13-2-2(4). And the Supreme Court of Georgia requires courts to "consider the insurance policy as a whole," to "give effect to each provision," and attempt to "harmonize" the provisions together. *Nat'l Cas. Co. v. Ga. Sch. Bds. Ass'n – Risk Mgmt. Fund*, 304 Ga. 224, 227-28 (2018). Thus, "Georgia law prefers a construction that will not render any of the policy provisions meaningless or mere surplusage." *Ace Am. Ins. Co. v. Wattles Co.*, 930 F.3d 1240, 1261 n.22 (11th Cir. 2019) (quoting *Nat'l Cas.*, 304 Ga. at 227). And where two provisions might conflict, "when a provision specifically addresses the issue in question, it prevails over any conflicting general language." *Deep Six, Inc. v. Abernathy*, 246 Ga. App. 71, 74 (2000).

**b. ANI's position renders Section 1(b) meaningless and mere surplusage, and it violates the repugnant provisions doctrine.**

ANI relies on Section 1 and Section 7 to shift its *Doe I* defense duty to the 2018 Policy. Section 1 is the Insuring Agreement, which consists of two parts. Section 1(a) explains what the Policy covers: "sums that an insured becomes legally obligated to pay as 'damages' because of 'bodily injury' arising from 'improper sexual conduct' or 'physical abuse.'" It also requires that the first act be

committed during the Policy's period. Section 1(b) addresses how to assign multiple claims. It explains that any claim, claims, or suits "arising from a single act or a series of continuous or repeated acts of 'improper sexual conduct' or 'physical abuse' by the same person or two or more persons acting in concert. . . will be considered as having resulted from the same 'improper sexual conduct' or 'physical abuse,' which shall be deemed to have been committed on the date of the first such act." (SUMF ¶¶ 11, 13.) Put simply, Section 1(b) batches claims/suits arising from a *single act* or *continuous or repeated acts* by the *same person* or *two or more persons acting in concert*.

Against this backdrop, ANI relies on Section 1(b) to argue that its duty to defend *Doe I* arises under the 2018 Policy (rather than the 2019 Policy and its separate $1 million per-claim ISCPA limits). But to do so, ANI must meet Section 1(b)'s condition that the claims result from (1) a single act or (2) continuous or repeated acts. Neither succeeds. Start with "a single act." To meet this definition, ANI must contend that *Doe I* and *Doe II* are claims arising from a single act. An "act" is "the doing of a thing"—a "deed." *Act*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/act (last visited July 29, 2026). But ANI's argument hits a roadblock because *Doe I* and *Doe II* did not arise from a single act. They arose from: (1) different alleged acts, (2) against different students (*Doe I* and *Doe II*), (3) in different school years (2018-19 and 2019-20), (4) involving

different alleged conduct severity (alleged groping versus alleged rape), and (5) under different FAST administrations. (SUMF ¶¶ 13, 22, 24, 26-29.)

The same holds true for "continuous or repeated;" *Doe I* and *Doe II* fail this condition too. ***Continuous*** requires an "uninterrupted extension in space, time, or sequence." *Continuous*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/continuous (last visited July 29, 2026). Alleged acts against two different victims in two different school years do not satisfy this definition. Likewise, ***repeated*** requires "renewed or recurring again and again." *Repeated*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/repeated (last visited July 29, 2026). Two different victims with different severity for the alleged acts do not satisfy this definition either. (SUMF ¶¶ 22, 24, 26-28.)

Understanding these limitations, ANI appears to focus on the "single act" requirement by interjecting Section 7(5), the definition for "improper sexual conduct,"[1] into Section 1. After defining acts that qualify as "improper sexual conduct," Section 7(5) deems "[e]ach, every and all" acts "committed by . . . one person" to be "one act," "regardless of" the "number of injured parties," the "period of time," or the "number of acts." Thus, according to ANI, all Vandel's

[1] To the extent that ANI instead relies on Section 7(7), the definition for "physical abuse," this argument applies with equal force. The "improper sexual conduct" and "physical abuse" definitions are materially identical for the purposes of this argument.

acts alleged in *Doe I* and *Doe II* constitute "one act." And, under Section 1(b), that one act is deemed to have been committed during the 2018 Policy. But ANI's position renders Section 1(b) meaningless and mere surplusage, and it violates the repugnant provisions doctrine. (SUMF ¶¶ 13, 15.)

It is important to first address how each provision is supposed to operate. Section 7(5) determines the units of conduct that each claim presents. For example, one victim's repeated abuse by one perpetrator is one "improper sexual conduct" act, not dozens, and qualifies as a single claim and draws only one policy limit. Section 1(b) answers two different questions. It answers when separate claims *merge* and what *date* that merged conduct bears. But it answers those questions *conditionally*. There must be (1) a single act or continuous or repeated acts (2) committed by the same person or two or more persons acting in concert. When those conditions are met, Section 1(b) alone supplies the operative date: merged claims are "deemed to have been committed on the date of the first such act." (SUMF ¶¶ 13, 15.)

No matter if ANI runs Section 7(5) through Section 1(a) or 1(b) to support its argument, either reading renders Section 1(b) superfluous, at least in part. Start with Section 1(b). If Section 7(5) supplies the batching for different acts, then Section 1(b)'s analysis of whether claims arise from "a single act or a series of continuous or repeated acts" becomes superfluous, because there will always be only one act. There is never a "series" to test for continuity or repetition; the

definition has already merged every act into one. Thus, the term "series" becomes surplusage, and Georgia courts "should not render any language in a contract as superfluous." *Argo*, 338 Ga. App. at 609. And "the same person" means nothing because Section 7(5) merges the acts of "one person" without requiring sameness across claims. But conditions that screen nothing are not conditions, and ANI's position renders those conditions superfluous. (SUMF ¶ 13.)

Section 1(a) too. That section requires that "[t]he first act of 'improper sexual conduct' or 'physical abuse'" be committed during the policy period. The phrase "the first act" makes sense only if there are several acts to choose among. But Section 7(5), as ANI reads it, guarantees that there is only ever one. That leaves ANI with two potential readings of Section 1(a), neither of which helps it. (SUMF ¶¶ 11, 15.)

On the first reading, "the first act" still looks back to the earliest of Vandel's underlying incidents. If that is right, Section 1(a) does the entire job by itself. Section 7(5) merges the acts, the words "the first act" select the date, and the rest of that same sentence requires that the date fall within "the effective dates of this policy's period." Nothing remains for Section 1(b). (SUMF ¶¶ 11, 13.) Its deeming clause supplies a date Section 1(a) has already fixed, and its final sentence repeats a period test Section 1(a) has already imposed. The Court would never reach Section 1(b) at all, making it pure surplusage.

That is the reading the Supreme Court of Georgia rejected in *York Ins. Co. v. Williams Seafood of Albany, Inc.*, 273 Ga. 710, 712 (2001). There, an insurer argued that a broadly worded flood exclusion reached a specific grant of additional coverage for sinkhole collapse. *Id.* at 710-11. The court refused, because "[a]ny other reading would render the Additional Coverages found in section D to be superfluous," and "the additional coverage in section D would be meaningless." *Id.* at 712. The same is true here: as ANI reads it, the general deeming sentence in Section 7(5) leaves the specific conditions in Section 1(b) with nothing to do.

On the second reading, if ANI takes Section 7(5) at face value and there is genuinely only one act, then Section 1(a) cannot supply a date. There is no "first" of one, rendering additional language superfluous. Practically, ANI is left holding a single act with no date attached to it. To place that act inside the 2018 Policy period, ANI needs a provision that tells the Court on what date the merged conduct is "deemed" to have occurred. Only one provision in the ISCPA Coverage does that. Section 1(b) deems merged conduct "to have been committed on the date of the first such act." (SUMF ¶ 13.) So ANI must come back to Section 1(b) for its date, running into the superfluous issue identified above. (*Id.*)

In contrast, Plaintiffs' interpretation provides harmony to every applicable sentence in the ISCPA Coverage. Section 7(5) counts the <u>*acts*</u> of "improper sexual conduct" each claim presents: one course of abuse is one act, however many incidents it comprises (*e.g.*, one victim abused dozens of times over multiple years

is "one act"). Through its conditions, Section 1(b) determines when *claims* merge: only those arising from (1) the same act or series of continuous or repeated acts (2) "by the same person or two or more persons acting in concert" merge. Its deeming clause dates the merged conduct. And its final sentence tests that date against "the effective dates of this policy," so merger cannot carry an out-of-period course of abuse into a policy that never insured it. (SUMF ¶¶ 13, 15.)

Meanwhile, Section 1(a) establishes the Policy's basic territorial and temporal coverage trigger: the first underlying act must have been committed in the coverage territory during the policy period. This is confirmed by the definition of "claim," which requires that a claim "result from" conduct "committed during the effective dates of this policy." And Section 2(6) patrols the boundary from the exclusion side, barring coverage for conduct "which takes place prior to or after the effective dates of this policy." Every job assigned, every applicable provision at work. (SUMF ¶¶ 11, 17.)

Applying Plaintiffs' interpretation, coverage at least potentially exists under the 2019 Policy, and thus so does the duty to defend. Because *Doe I* alleges a distinct course of abuse during the 2019 Policy period that does not merge with *Doe II* under Section 1(b), *Doe I* at least potentially falls within the 2019 Policy's coverage, triggering ANI's duty to defend under that Policy.

The same does not hold true for ANI's interpretation. It requires the Court to read at least one condition out of Section 1(b) or to read Section 1(b) out of the

ISCPA Coverage entirely. Except, Georgia courts "must avoid giving the contract a construction which entirely neutralizes one provision if it is susceptible of another which gives effect to all of its provisions." *Flynt v. Life of S. Ins. Co.*, 312 Ga. App. 430, 437 (2011) (citation omitted). This Court has already rejected a similar move in a coverage dispute. *SavaSeniorCare, LLC v. Starr Indem. & Liab. Co.*, No. 1:18-cv-01991-SDG, 2021 WL 4429088, at *12-13 (N.D. Ga. Sept. 27, 2021). Even if the Court finds that both ANI and Plaintiffs present reasonable constructions, the Policy must be construed in Plaintiffs' favor. *Giddens v. Equitable Life Assur. Soc'y of U.S.*, 445 F.3d 1286, 1297 (11th Cir. 2006) ("[W]hen a policy is ambiguous, or is capable of two reasonable interpretations, it is construed in the light most favorable to the insured and against the insurer.").

If the Court accepts ANI's construction, it must then resolve the resulting "repugnant conflict" that construction creates. *See U.S. Fire Ins. Co. v. Hilde*, 172 Ga. App. 161, 163 (1984). *Doe I* alleges conduct that occurred entirely after that Policy expired. On ANI's reading, Section 1(b) purports to pull *Doe I* into the 2018 Policy period. Except, in the very next section, Section 2(6), ANI withholds coverage for bodily injury arising from conduct "which takes place **prior to or after** the effective dates of this policy." (SUMF ¶ 17 (emphasis added).) ANI's interpretation creates an irreconcilable contradiction that finds no answer in the Policies' text. It may claim that Section 1(b)'s deemed date displaces the date the conduct actually took place, but the ISCPA Coverage never says so, and it uses deeming language when

it means to deem. Thus, ANI's construction violates the repugnant provisions doctrine. *See Hilde*, 172 Ga. App. at 163 (explaining where policies contain repugnant provisions, "the provision most favorable to the insured will be applied").

The Court need not reach that fallback. On the harmonious construction, *Doe I* and *Doe II* fail Section 1(b)'s conditions for the reasons above. The two courses of alleged conduct do not overlap. *Doe II*'s ends when her parents withdrew her at the end of December 2019, and the *Doe II* complaint pleads that "after she withdrew from FAST, Vandel subsequently turned his attention to her friend." (SUMF ¶¶ 24-25.) *Doe I*'s alleged abuse occurs, in the Second Semester of the 2019-2020 school year, and no allegation in either operative complaint places any abuse of that student earlier. (SUMF ¶¶ 27-28.) Thus, *Doe I* at least potentially falls within the 2019 Policy's ISCPA Coverage, which is all the duty to defend requires.

For these reasons, the Court should reject ANI's position, which allows Section 7(5) to render Section 1(b) superfluous, and adopt Plaintiffs' construction, which requires that any attempt to batch *Doe I and Doe II* be tested against Section 1(b)'s full conditions. After doing so, the Court should hold that *Doe I* and *Doe II* fail to meet Section 1(b)'s batching clause, and thus ANI owes a duty to defend *Doe I* under the 2019 Policy.

**3. Even if ANI's position is accepted, ANI must defend Beiner, Epstein, and FAST under the 2019 Policy.**

Even if ANI could batch some insureds' *Doe I* coverage into the 2018 Policy, it cannot batch Beiner, Epstein, or FAST into only the 2018 Policy. The ISCPA Coverage does not apply to the insureds as a group. It applies "[s]eparately to each insured against whom a 'claim,' or 'claims' is made or a 'suit' is brought."[2] (SUMF ¶ 18.) "The purpose of the separation-of-insured clauses . . . is to provide each insured with separate coverage, as if each were separately insured with a distinct policy." *Nuvell Nat'l Auto Fin., LLC v. Monroe Guar. Ins. Co.*, 319 Ga. App. 400, 405 (2012). Thus, the Court must ask the coverage question one insured at a time. For these three insureds, the answer does not change no matter how ANI reads Sections 1(b) and 7(5).

*Doe I* asserts claims against Beiner and Epstein, alleging that they engaged in "improper sexual conduct," as the Policies define that term. (SUMF ¶ 36.) The Policies define "improper sexual conduct" to include "the failure to report an incident of 'improper sexual conduct' to the proper authorities" and "the withholding of pertinent information" concerning such an incident, and it reaches

[2] The provision's opening clause excepts "SECTION 5 – LIMITS OF INSURANCE," but that carve-out governs how the limits are computed, not whether coverage exists or whether a defense is owed. The duty to defend arises under Section 1, and Section 6(7) directs that Section 1 be applied to each insured separately. (SUMF ¶ 18).

"actual, attempted, or alleged" conduct. (SUMF ¶ 14.) A reporting failure is thus a defined act of "improper sexual conduct" in its own right, with its own actor and its own date. (SUMF ¶ 14.)

In alleging such claims, *Doe I* ties her claims against Beiner and Epstein to the 2019 Policy's period. Start with their roles. She alleges that Beiner "was principal of FFI d/b/a FAST, a position he began with the 2019-2020 school year." (SUMF ¶ 29.) She alleges that Epstein served as assistant principal for the middle school, without fixing the dates of his tenure. (SUMF ¶ 30.)

For Beiner, the timing is not ambiguous at all. *Doe I* pleads his alleged breach as occurring inside his tenure: Beiner "breached the duty he owed to [*Doe I*] to ensure that she, as a student, was safe, during his tenure as Principal of FFI d/b/a FAST." (SUMF ¶ 31.) The subparts that follow concern information predating Vandel's 2017 hiring—the findings of a GPSC investigation, the reports of fourteen teachers and seven students. (Id.) But *Doe I* does not allege that Beiner ignored that information before he arrived. She alleges that he ignored it "during his tenure," which began with the 2019-2020 school year. (SUMF ¶¶ 29, 31.) Nor does either operative complaint allege any dated act, omission, or failure to report by Beiner between June 1, 2019 and July 31, 2019, or at any time before December 2019. (SUMF ¶ 35.) The earliest act *Doe I* dates to him falls four months into the 2019 Policy period: "[o]n or about December 2, 2019, Beiner and Epstein met with Teacher 21 and Student 12 . . . to discuss Vandel's sexual harassment of Student

12." (SUMF ¶ 34.) The allegations that follow concern what he failed to do afterward. (SUMF ¶ 34.)

Epstein stands in the same place, with one difference: *Doe I* never fixes the dates of his tenure. She pleads his breach exactly as she pleads Beiner's: Epstein "breached the duty he owed to [*Doe I*] . . . during his tenure as Assistant Principal of FFI d/b/a FAST." (SUMF ¶ 32.) ANI may point to general allegations, but no such allegations assign either insured a dated act. To the extent any gap remains, it is a gap in *Doe I*'s dating of Epstein's conduct. And such a gap compels a defense rather than defeating one. *Fireman's Fund*, 654 S.E.2d at 209.

Based on these allegations, there is "potentially or arguably" coverage under the 2019 Policy for Beiner, Epstein, and FAST. Taking each insured separately, as Section 6(7) requires, *Doe I* seeks to hold Beiner, Epstein, and FAST "legally obligated to pay as 'damages'" sums "because of 'bodily injury' arising from 'improper sexual conduct' or 'physical abuse'" all based on Beiner's and Epstein's independent alleged acts: alleged failure to report, withholding of information, and negligent supervision and retention. (SUMF ¶¶ 11, 33, 36.) Section 1(a) is also met because those independent alleged acts of "improper sexual conduct" were "committed in the 'coverage territory' during the effective dates of [the 2019 Policy's] period." (SUMF ¶¶ 11, 18, 29, 34-35.)

With the insuring agreement met, ANI must meet Section 1(b) to batch these claims with other Vandel-related allegations. But it cannot meet the conditions to

do so. Section 1(b) batches claims arising from acts "by the same person or two or more persons acting in concert." (SUMF ¶ 13.) Likewise, Section 7(5) consolidates acts "committed by, participated in, directed by, instigated by or knowingly allowed to happen by one person or two or more persons acting in concert." (SUMF ¶¶ 13, 15.)

Neither is present here. *Doe I* pleads negligence against Epstein, and negligence and deliberate indifference against Beiner. (SUMF ¶ 36.) It pleads no concert of action, no conspiracy, and no aiding and abetting against either. (SUMF ¶ 37.) To batch the claims against these two insureds into the 2018 Policy, ANI must fold in the alleged abuse of a different student, at a school Beiner had not yet even joined as an administrator, and then treat that consolidated "act" as theirs. It cannot do so. Because ANI cannot use Section 1(b), Section 7(5), or a combination thereof to batch Beiner's and Epstein's alleged acts with Vandel's or any other insured's alleged acts that precede the 2019 Policy, ANI must defend Beiner and Epstein under the 2019 Policy. (SUMF ¶¶ 29, 35-37.)

FAST is entitled to a defense on the same per-insured analysis, and it need not have acted itself. Section 1(a) does not require the insured seeking coverage to be the actor: it asks whether "an insured becomes legally obligated to pay as 'damages' because of 'bodily injury' arising from 'improper sexual conduct' or 'physical abuse,'" and requires that "[t]he first act" be "committed in the 'coverage territory' during the effective dates of this policy's period." (SUMF ¶ 11.) *Doe I*

seeks to hold FAST liable for "the actions of its agents, employees, and board members through the doctrine of respondeat superior." (SUMF ¶ 38.) Among those agents are Beiner and Epstein, whose alleged failures *Doe I* places inside their tenures. And Beiner's tenure began with the 2019-2020 school year, as both operative complaints allege. (SUMF ¶ 29.) That obligation to pay "damages" arising from in-period acts satisfies Section 1(a).

ANI has no basis to batch those allegations with earlier conduct either. Section 1(b) batches acts by "the same person" or "two or more persons acting in concert;" it does not batch acts by an organization. To be sure, ANI contemplated this distinction between a person and an organization when drafting this provision, because the same sentence refers to "'damages' claimed by any person or organization." (SUMF ¶ 13.) Section 7(5) offers no alternative route. It too requires "one person or two or more persons acting in concert." (SUMF ¶ 15.) Because ANI cannot batch Beiner's and Epstein's in-period conduct with Vandel's, it cannot batch the claims against FAST that rest on it.

## V. CONCLUSION

For these reasons, the Court should grant Plaintiffs' Motion and hold that ANI owes Plaintiffs a defense for *Doe I* under the 2019 Policy's separate $1 million per-claim ISCPA limit. In the alternative, the Court should hold that ANI must defend Beiner, Epstein, and FAST for *Doe I* under the 2019 Policy.

Respectfully submitted this 29th day of July, 2026.

FELLOWS LABRIOLA LLP

*/s/ Ethan M. Knott*
Ethan M. Knott
Georgia Bar No. 737481
eknott@fellab.com

Peachtree Center
Suite 2400 Harris Tower
233 Peachtree Street, N.E.
Atlanta, Georgia 30303
(404) 586-9200

*Attorneys for Plaintiffs*

**CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that this filing was prepared using one of the font and point selections approved by this Court in Local Rule 5.1. Specifically, Book Antiqua font was used in 13-point.

*/s/ Ethan M. Knott*
Ethan M. Knott

**CERTIFICATE OF SERVICE**

I certify that on this day, I electronically filed this document with the Clerk of Court using the CM/ECF system, which will automatically serve all counsel of record via electronic mail.

Respectfully submitted, this 29th day of July, 2026.

*/s/ Ethan M. Knott*
Ethan M. Knott