**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA,**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| FOUNDING FOURTEEN, INC. d/b/a FULTON ACADEMY OF SCIENCE AND TECHNOLOGY, ANNETTE HIGGINS, STAN J. BEINER, ASHLEY STINGER, JUNE ERICKSON, JOSEPH AKPAN, AND PETER EPSTEIN,<br><br>Plaintiffs,<br>v.<br><br>ALLIANCE OF NONPROFITS FOR INSURANCE RISK RETENTION GROUP,<br><br>Defendant. | ) | Case No: 25-cv-05436 SDG<br><br>Honorable Steven D. Grimberg, United States District Judge |

**<u>DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>**

ALLIANCE OF NONPROFITS FOR INSURANCE RISK RETENTION GROUP ("ANI") submits this reply in support of its summary judgment motion.

## I. INTRODUCTION

Plaintiffs' opposition does not preclude summary judgment. First, their duty-to-defend analysis fails to apply the 2019 policy as a whole, including the ISCPA Coverage Part's aggregation and deeming provisions. Second, sections 7(5), 7(7), and 1(b) perform distinct functions and, in any event, this Court has cautioned that the anti-surplusage canon must be applied with special care to insurance contracts.

Third, Plaintiffs' attempts to distinguish ANI's authorities do not undermine their support for the principle that courts enforce insurance policies according to their terms. Fourth, Plaintiffs' fallback theory does not create separate 2019 coverage for Beiner, Epstein, or FAST because it ignores misconduct during the 2018 policy. Because the 2019 insuring agreement requires the first act to occur during that policy period, but the aggregation and deeming provisions place the misconduct alleged in *Doe I* and *Doe II* in the 2018 policy period, the 2019 policy affords no coverage.

## II. ARGUMENT

### A. Plaintiffs' Duty-To-Defend Argument Misapplies The 2019 Policy.

Plaintiffs argue that Georgia's duty-to-defend standard requires coverage under the 2019 policy because *Doe I* alleges misconduct during that policy period. But the complaint must be compared with the entire policy, including the ISCPA Coverage Part's aggregation and deeming provisions. Plaintiffs instead stop after identifying 2019 misconduct without addressing how the policy treats allegations spanning 2018 and 2019.

Georgia courts enforce policies as written and harmonize their provisions. *Nat'l Cas. Co. v. Ga. Sch. Bds. Ass'n-Risk Mgmt. Fund*, 304 Ga. 224, 228, 232 (2018); *Argo v. G-Tec Servs., LLC*, 338 Ga. App. 608, 610-11, 791 S.E.2d 193 (2016). The 2019 policy answers the coverage question here through two complementary provisions. Sections 7(5) and 7(7) provide that "[e]ach, every and

all" alleged acts of improper sexual conduct or physical abuse by one person "shall be considered to be one act," regardless of the number of injured parties, the period of time involved, or the number of acts. ANI SOF ¶¶ 27-28. Section 1(b), in turn, provides that any "claim," "claims," or "suits" arising from "a single act or a series of continuous or repeated acts" by the same person will be considered to have resulted from the same improper sexual conduct or physical abuse, which "shall be deemed to have been committed on the date of the first such act." ANI SOF ¶ 26.

Those provisions dictate the duty-to-defend result here. Plaintiffs argue that *Doe I* triggers the 2019 policy because it alleges misconduct during the 2019-2020 school year. But *Doe I* concerns the same alleged perpetrator whose misconduct began during the 2018 policy period. ANI SOF ¶¶ 7, 20. Under sections 7(5) and 7(7), all alleged misconduct is treated as one act regardless of the number of injured parties, the time involved, or the number of alleged acts. Section 1(b) then deems the resulting claims or suits to arise from the same misconduct committed on the date of the first act. *Doe I* alleges that Vandel was hired before the beginning of the 2017-2018 school year and thereafter engaged in grooming, sexual harassment, inappropriate touching, and other misconduct. ANI SOF ¶ 13 (Ex. B ¶¶ 66-70, 145). It also alleges misconduct during Higgins' tenure as principal, which ended at the close of the 2017-2018 school year. ANI SOF ¶ 13 (*see* Ex. B ¶¶ 24, 170). Under the ISCPA Coverage Part's insuring agreement the "first act of 'improper sexual

conduct' or 'physical abuse' must be committed . . . during the effective dates of this policy's period." ANI SOF ¶ 26. Because sections 7(5), 7(7), and 1(b) deem the first act to have occurred during the 2018 policy, the 2019 insuring agreement is not satisfied, and the misconduct falls within the 2018 policy as a matter of law.

### B. Sections 7(5), 7(7), and 1(b) Are Complementary.

Plaintiffs argue that ANI collapses multiple acts into one claim, rendering section 1(b)'s "series of continuous or repeated acts" language superfluous. But the aggregation and deeming provisions perform distinct functions. Sections 7(5) and 7(7) aggregate misconduct, while section 1(b) addresses the resulting claims or suits and deems the misconduct committed as of the first act.

#### 1. Plaintiffs' Surplusage Argument Fails.

Plaintiffs argue that ANI treats sections 7(5) and 7(7) as collapsing multiple claims into one claim under one policy, rendering the phrase "series of continuous or repeated acts" in section 1(b) superfluous. Plaintiffs emphasize that sections 7(5) and 7(7) say "one act," not one claim, occurrence, or policy. But ANI does not rely on those provisions in isolation. Sections 7(5) and 7(7) provide that "[e]ach, every and all" alleged acts of improper sexual conduct or physical abuse committed by one person "shall be considered to be one act," regardless of the number of injured parties, time, or number of acts. ANI SOF ¶¶ 27-28. These provisions thus determine how misconduct is treated under the ISCPA Coverage Part.

Section 1(b) then addresses the resulting "claims" or "suits." It provides that claims from a "single act or a series of continuous or repeated acts" by the same person are considered to have resulted from the same improper sexual conduct or physical abuse, which "shall be deemed to have been committed on the date of the first such act." ANI SOF ¶ 26. Section 1(b) therefore connects the aggregated misconduct to the resulting claims or suits and assigns them an operative date. Thus, although Plaintiffs are correct in the limited sense that "one act" and "one claim" are not interchangeable, that distinction does not undermine ANI's interpretation. Sections 7(5) and 7(7) aggregate misconduct. Section 1(b) connects the resulting claims or suits and deems the misconduct committed on the date of the first act.

Here, the allegations in *Doe I* do not stand alone merely because *Doe I* is a separate suit. *Doe I* and *Doe II* allege misconduct by the same teacher. Sections 7(5) and 7(7) treat all such acts as one act, and section 1(b) treats the resulting claims or suits as resulting from the same conduct, deemed committed on the date of the first act, during the 2018 policy. Moreover, *Doe I* itself alleges misconduct during the 2018 policy. Thus, coverage, if any, is limited to the 2018 policy.

### 2. ANI Does Not Render Section 1(b) Superfluous.

Plaintiffs argue that ANI's interpretation renders "a series of continuous or repeated acts" in section 1(b) superfluous because sections 7(5) and 7(7) already treat one person's misconduct as one act. This argument conflates factual conduct

with its contractual treatment. Sections 7(5) and 7(7) contemplate multiple acts, victims, and periods but treat that conduct as one act. Section 1(b) then identifies the claims and suits subject to common treatment, deems them to result from the same misconduct, and assigns the first act's date. Its reference to "a series of continuous or repeated acts" simply confirms that it reaches claims arising from continuing incidents, even when the aggregation provisions treat that series as one act.

Plaintiffs also overstate the anti-surplusage canon. Even if "a series of continuous or repeated acts" were superfluous, this Court recently cautioned that "the anti-surplusage 'canon needs to be deployed with special care in a setting—insurance contracts'[.]" *Wedde v. C. Mut. Ins. Co.*, 2025 WL 3088901, at 9 (N.D. Ga. Sept. 22, 2025), *appeal dismissed*, 2026 WL 1052313 (11th Cir. Mar. 25, 2026). Rejecting a similar argument, *Wedde* explained that "'[s]uperfluous exceptions are commonplace' in insurance contracts and 'have the effect merely of 'mak[ing] assurance doubly sure.'" *Id*. at 9. Here, some overlap among sections 1(b), 7(5), and 7(7) does not permit Plaintiffs to disregard applicable policy language.

Plaintiffs' reliance on *York Ins. Co. v. Williams Seafood of Albany, Inc.*, 273 Ga. 710 (2001) does not change the analysis. *York* requires reading a policy as a whole and harmonizing its provisions, which supports treating sections 1(b), 7(5), and 7(7) as complementary. There, the Georgia Supreme Court declined to apply an exclusion because doing so would render an additional coverage grant meaningless.

*Id.* at 712. ANI's interpretation nullifies no coverage grant. At most, Plaintiffs identify limited redundancy, not the elimination of coverage addressed in *York*. Under *Wedde*, that redundancy does not justify disregarding clear terms.

### 3. The "Sole and Only Policy" Clause Is Unnecessary to ANI.

Plaintiffs cite the "sole and only policy" language in the Social Service Professional Liability form, arguing that its absence from the ISCPA Coverage Part shows ANI knew how to limit coverage to one policy. But ANI's motion relies on the ISCPA Coverage Part's aggregation and related-claims provisions, not language in a separate form. The Court can resolve ANI's motion by applying sections 7(5), 7(7), and 1(b) without reaching the separate "sole and only policy" language.

## C. Plaintiffs' Effort To Distinguish ANI's Authorities Does Not Undermine ANI's Interpretation Of The ISCPA Coverage Part.

Plaintiffs identify differences between the policies in ANI's authorities and the ISCPA Coverage Part, but ANI does not contend they are identical. ANI cites those decisions for the proposition that courts enforce abuse-aggregation and first-act deeming provisions according to their plain terms, even when doing so results in multiple acts, victims, and lawsuits being treated as one act assigned to one policy period. *See Philadelphia Indemnity Ins. Co. v. Eubanks*, 378 Ga. App. 837 (2026); *TIG Ins. Co. v. Smart School*, 401 F. Supp. 2d 1334 (S.D. Fla. 2005).

### 1. *Eubanks* Supports Enforcement Of ANI's Deeming Provisions.

Plaintiffs distinguish *Eubanks* because the abuse there ended before the relevant policy periods, while *Doe I* alleges abuse during the 2019 policy. But ANI cites *Eubanks* because it enforced language providing that "each, every and all" acts of abuse constituted one abusive act, regardless of the number of victims, acts, or period involved, and deemed the aggregated misconduct to occur at the first act. 378 Ga. App. at 846. The court explained that this language "expressly defines multiple acts of abuse as a single incident that took place at the time of the first abusive act." *Id*. at 848. That principle applies whether later allegations concern continuing injury or additional misconduct during a later policy period.

Plaintiffs note that *Eubanks* addressed aggregation and timing in one definition, while the ISCPA Coverage Part uses separate provisions. That structural difference does not alter their combined effect or *Eubanks*' precedential value. Sections 7(5) and 7(7) govern the alleged misconduct, while section 1(b) governs the resulting claims and suits and supplies the deemed date. ANI SOF ¶¶ 26-28. Plaintiffs' reliance on alleged reporting failures likewise does not distinguish *Eubanks* because the definitions of "Improper Sexual Conduct" and "Physical Abuse" include failures to report and withholding information. ANI SOF ¶¶ 27-28. If covered, those failures are subject to the aggregation and deeming provisions.

**2. Plaintiffs' Distinctions Do Not Undermine ANI's Authorities.**

Plaintiffs distinguish *Smart School* because its policy combined the perpetrator's abuse and the insured's negligence into one occurrence. But ANI cites *Smart School* because it enforced aggregation and deeming language, holding that one perpetrator's misconduct toward different victims constituted one occurrence assigned to the policy period of the first act. 401 F. Supp. 2d at 1342-43, 1346-49. It read separate aggregation and timing provisions together. One determined whether separately covered claims are one occurrence, while the other determined when that occurrence took place. *Id.* at 1346-48. Similarly here, sections 7(5) and 7(7) determine how misconduct is treated, and section 1(b) governs the resulting claims.

Plaintiffs make the same argument against *Merryland* and *San Antonio YMCA*, but those decisions reinforce the same principle by enforcing similar language to aggregate multiple acts of abuse under one policy period. *See TIG Ins. Co. v. Merryland Childcare & Dev. Ctr., Inc.*, 2007 WL 316571, at 4–6 (W.D. Tenn. Jan. 31, 2007); *TIG Ins. Co. v. San Antonio YMCA*, 172 S.W.3d 652, 657, 661–62 (Tex. App. 2005). Although their policies are not identical to those at issue here, both decisions support reading the ISCPA Coverage Part's complementary aggregation and timing provisions together.

Plaintiffs dismiss *Freeburg*, *Navigators*, and *Appalachian*, as involving different policy language, but ANI cites them for the common principle that related

acts, claims, or occurrences may be treated as one when the policy so provides. *See Freeburg Cmty. Consol. Sch. Dist. No. 70 v. Country Mut. Ins. Co.*, 2021 IL App (5th) 190098, ¶¶ 100-02 (treating abuse lawsuits as one claim based on the same perpetrator, institutional failures, and type of harm); *Navigators Ins. Co. v. Under Armour, Inc.*, 165 F.4th 171, 183–86 (4th Cir. 2026) (treating litigation and investigations as one because they were logically or causally related); *Appalachian Ins. Co. v. Liberty Mut. Ins. Co.*, 676 F.2d 56, 61–63 (3d Cir. 1982) (treating claims by employees from alleged discrimination as one occurrence). Plaintiffs' further reliance on *Beaufort Cnty. Sch. Dist. v. United Nat'l Ins. Co.*, 709 S.E.2d 85 (S.C. Ct. App. 2011) does not undermine that principle. *Beaufort* turned on its specific definition of sexual abuse, which focused on one victim, and distinguished *Smart School*, *Merryland*, and *San Antonio YMCA* on that basis. *Id*. at 90, 93. Here, the issue is how ANI's aggregation and deeming provisions work together, and *Beaufort* provides no basis to disregard sections 7(5), 7(7), or 1(b).

### D. Plaintiffs' Fallback Theory Does Not Create Separate Coverage Under the 2019 Policy for Beiner, Epstein, or FAST.

Plaintiffs' fallback argument ignores the policy's aggregation and deeming provisions. They contend that Beiner, Epstein, and FAST are entitled to separate coverage under the 2019 policy because *Doe I* alleges "Improper Sexual Conduct" during the 2019 policy. But Section 1(b) does not ask whether a complaint alleges some act of misconduct during a later policy period. Rather, it requires that claims

or suits arising from the same person's improper sexual conduct be treated as arising from the same misconduct and deemed committed on the date of the first act.

The policy defines "Improper Sexual Conduct" to include sexual abuse or harassment, failure to report incidents of misconduct, and withholding information about such conduct. ANI SOF ¶¶ 27-28. It also provides that "[a]ny 'claim,' 'claims' or 'suits' ... arising from a single act or a series of continuous or repeated acts ... of 'improper sexual conduct' … by the same person ... will be considered as having resulted from the same 'improper sexual conduct' … which shall be deemed to have been committed on the date of the first such act." ANI SOF ¶ 26.

Under that language, Plaintiffs cannot isolate alleged reporting failures occurring during the 2019 policy period from the underlying misconduct that gave rise to those allegations. Both *Doe I* and *Doe II* arise from Vandel's alleged misconduct. And both lawsuits allege that Vandel engaged in such conduct during the 2018 school year, before the inception of the 2019 policy. ANI SOF ¶¶ 7, 13 (Ex. B ¶¶ 66-70, 145), 23-24. Because the claims in both lawsuits arise from Vandel's alleged misconduct, section 1(b) requires that they be treated as arising from the same Improper Sexual Conduct and deemed committed on the date of the first such act. Thus, the relevant inquiry is not whether additional acts, omissions, or reporting failures allegedly occurred during the 2019 policy period, but when the first act of

Improper Sexual Conduct allegedly occurred. The complaints allege that it occurred during the 2018 policy period. ANI SOF ¶¶ 7, 13 (Ex. B ¶¶ 66-70, 145).

Even when *Doe I* is examined in isolation, Plaintiffs' argument fails because *Doe I* itself alleges acts of Improper Sexual Conduct during the 2018 policy period. Specifically, the complaint alleges that Vandel was hired before the 2017-2018 school year and thereafter engaged in grooming, sexual harassment, inappropriate touching, and other misconduct. ANI SOF ¶ 13 (Ex. B ¶¶ 66-70, 145). Thus, even accepting Plaintiffs' contention that subsequent acts occurred during the 2019 policy, *Doe I* alleges that the first acts of Improper Sexual Conduct occurred before the inception of the 2019 policy. Under section 1(b), all resulting claims are therefore deemed committed on the date of those earlier acts, during the 2018 policy.

Plaintiffs also argue that reporting failures alleged in *Doe I* are independent acts of Improper Sexual Conduct. Yet *Doe I* alleges such conduct during Higgins' tenure as principal, which ended at the close of the 2017-2018 school year. ANI SOF ¶ 13 (Ex. B ¶ 24). *Doe I* alleges that Higgins failed to investigate Vandel's history of sexual misconduct, discouraged reporting, permitted Vandel to remain at the school despite known allegations of misconduct, and failed to take corrective action. ANI SOF ¶ 13 (Ex. B ¶ 24). It further alleges that Higgins ignored reports about Vandel and failed to act. ANI SOF ¶ 13 (Ex. B ¶ 170). Thus, even under Plaintiffs' reading, *Doe I* alleges acts of "Improper Sexual Conduct" during the 2018 policy.

Plaintiffs' interpretation would effectively nullify section 1(b)'s deeming provision. Under their approach, a new policy trigger could be created simply by pointing to a later reporting failure or omission arising from the same underlying misconduct. But section 1(b) expressly provides the opposite. Namely, claims and suits arising from the same Improper Sexual Conduct are aggregated and deemed committed on the date of the first such act. Because both *Doe I* and *Doe II* allege Improper Sexual Conduct by Vandel during the 2018 policy period, and because *Doe I* independently alleges acts of Improper Sexual Conduct during that same period, Plaintiffs cannot manufacture separate 2019 coverage by isolating later allegations while disregarding the earlier misconduct from which those claims arise.

## III. CONCLUSION

For the reasons in its briefing, this Court should grant ANI's motion and declare that there is no coverage for *Doe I* and *Doe II* under the 2019 policy.

Dated: September 23, 2026

Respectfully submitted,

ALLIANCE OF NONPROFITS FOR INSURANCE RISK RETENTION GROUP

By: *<u>/s/ Yaniel Abreu</u>*
*One of its Attorneys*

Junaid N. Savani (Georgia Bar No. 309992)
KENNEDYS CMK LLP
111 Brickell Avenue, Suite 1300
Miami, FL 33131
Telephone: (305) 371-1111
Fax: (305) 374-8066

junaid.savani@kennedyslaw.com

Yaniel Abreu (Florida Bar No. 0113219)
(*admitted pro hac vice*)
KENNEDYS CMK LLP
111 Brickell Avenue, Suite 1300
Miami, FL 33131
Telephone: (305) 371-1111
Fax: (305) 374-8066
yaniel.abreu@kennedyslaw.com

Samuel R. Stalker (Illinois Bar No. 6300938)
(*admitted pro hac vice*)
KENNEDYS CMK LLP
30 S. Wacker Dr., Ste. 3650
Chicago, IL 60606
Telephone: (312) 800-5000
Fax: (312) 207-2110
sam.stalker@kennedyslaw.com

*Attorneys for Defendant ANI*

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this filing was prepared using one of the font and size selections approved by this Court in Local Rule 5.1. Specifically, the filing uses 14-point Times New Roman.

/s/ *Yaniel Abreu*
Yaniel Abreu

## CERTIFICATE OF SERVICE

I certify that, on September 23, 2026, I electronically filed this document with the Clerk of Court using the CM/ECF system, which will automatically serve all counsel of record via electronic mail.

*/s/ Yaniel Abreu*
Yaniel Abreu